UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| OSNIEL MACIA SANTOS (A 244-530-438),<br>Petitioner,<br>v.<br>WARDEN,<br>Respondent. | No. 1:26-cv-02754-DC-SCR<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

**I. Factual and Procedural History**

Petitioner, a citizen of Cuba, entered the United States on May 12, 2024 by using the CBP One App. ECF No. 5-1 at 2-3. Customs and Border Protection ("CBP") arrested him the same day and served him with a Notice to Appear ("NTA") which charged him with being inadmissible pursuant to Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act. ECF No. 5-1 at 3. CBP then released Petitioner under its humanitarian parole authority. ECF No. 5-1 at 3.

On February 25, 2026, Petitioner was arrested in Las Vegas on a misdemeanor domestic battery charge. Id. On March 3, 2026, Petitioner entered a no contest plea to violating Nevada

Revised Statute 200.485(1)(a), domestic battery as a first offense. ECF No. 5-2. The state court deferred adjudication and imposed an interim sentence of 13 anger management courses, 48 hours of community service, and an order to have no contact with the victim and to "stay out of trouble" for one year. ECF No. 19-1. If Petitioner completes these conditions, the court will dismiss his case; otherwise a suspended sentence of 120 days' imprisonment will be imposed. Id. Petitioner completed the anger management courses during his current detention by Immigration and Customs Enforcement ("ICE") but is unable to complete the community service while detained. ECF No. 20 at 29:50-30:00.

On March 4, 2026, ICE took Petitioner into custody. ECF No. 5-1 at 2-3; ECF No. 5-2. On April 13, 2026, Petitioner filed a pro se application for writ of habeas corpus, claiming that his detention violates the Due Process Clause of the Fifth Amendment. ECF No. 1 at 16. District Judge Coggins – rejecting Respondent's position that Petitioner is an applicant for admission and subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) and finding that re-detention without a bond hearing violated his right to due process – granted the petition. ECF No. 7, 13. Judge Coggins' order directed Respondent to provide Petitioner a bond hearing before an immigration judge at which the government bears the burden of proving, by clear and convincing evidence, that Petitioner is either a flight risk or risk to community safety such that Petitioner's continued detention is justified. ECF No. 13.

Petitioner appeared before Immigration Judge ("IJ") Brent Carr for the court-ordered bond hearing on June 18, 2026. At the beginning of the hearing, IJ Carr noted that the government bore the burden to demonstrate, by clear and convincing evidence, that bond should be denied. ECF No. 20 at 02:50-03:15. Counsel representing the government argued that Petitioner is a danger to the community due to his arrest for domestic violence – which she characterized as "serious" because of the 120-day suspended sentence imposed – and that he has not demonstrated rehabilitation. Id. at 6:10-9:25. She also argued that Petitioner poses a risk of flight. Id. at 09:48-14:20. Petitioner responded that he came to the U.S. via the only legal process available (id. at 18:15-1910), acquired work authorization (id. at 19:15-19:25), worked lawfully as a security guard (id. at 22:40), and that he supports his three-year-old step-daughter. Id. at 22:30,

25:26-25:35. He expressed remorse for the domestic violence incident (id. at 24:15-24:39), which he characterized as a "discussion" with his partner and "a regular problem that partners have." Id. at 20:45, 23:45-24:03. He also emphasized that the state court classified the domestic violence charge as a misdemeanor (id. at 21:15-47) and that he took anger management classes as part of his sentence. Id. at 29:50-30:00. Petitioner stated that he tried to submit an evidence packet in advance of the bond hearing, but the IJ indicated that the court had not received any documents from him. Id. at 27:15-27:33. The IJ then asked Petitioner clarifying questions about the sentence he received for the domestic violence arrest (id. at 28:00-33:44) as well as his residence and employment history in the U.S. Id. at 31:18-32:09.

At the end of the hearing, the IJ summarized his findings as follows:

> … You were admitted. You obviously did receive a work permit and a social security number. You have been working as security guard… You have been here for approximately two years and you did enter a plea to a domestic violence charge which apparently you received some form of suspended sentence. It also appears to the Court that you were in confinement prior to your entry of a plea and taken into custody by immigration officials. So on that basis – and it's primarily because of the charge of domestic violence in this matter, which is a recent event – the Court is going to deny… a bond in this case.

Id. at 36:25-38:35. The IJ's written order stated he denied release on bond "because of recent act of recent act of (*sic*) domestic violence." ECF No. 22-1. The parties did not file a bond memorandum – a longer explanation of the IJ's reasoning in denying bond – in the instant action, and it is not clear if one exists. Though Petitioner initially reserved his right to appeal the IJ's decision, he did not actually appeal. Id.; ECF No. 22 at 3.

On July 28, 2026, Petitioner filed a motion to enforce judgment, arguing that the IJ abused his discretion by denying bond without consideration of all relevant factors and because he based his dangerousness determination on a misunderstanding of facts regarding the criminal offense and sentencing. ECF No.19. Respondent opposed the motion, arguing that Petitioner had not demonstrated any due process violation and that he had not exhausted administrative remedies because he did not appeal the bond denial to the Board of Immigration Appeals ("BIA"). ECF No. 22. Petitioner replied that exhaustion of administrative remedies in this matter is not required

and that the bond hearing "offends due process." ECF No. 23.

## II. Exhaustion

The federal habeas statute under which this case was filed does not require exhaustion of administrative remedies. Compare 28 U.S.C. § 2241 with 28 U.S.C. § 2254(b)(1)(A) (requiring exhaustion of state court remedies). Courts may require exhaustion as a prudential matter when "(1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review." Noriega-Lopez v. Ashcroft, 335 F.3d 874, 881 (9th Cir. 2003) (citation omitted). The exhaustion requirement may be waived if "administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void." Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004).

Relief from the prudential exhaustion requirement is warranted in this case. It is not clear that the BIA could evaluate the legality of the IJ's bond determination in relation to this court's preliminary injunction order. The BIA has, for example, consistently refused to reach and decide constitutional questions. See Matter of Fede, 20 I&N Dec. 35 (BIA 1989) (explaining why neither an IJ nor the BIA have the legal authority to consider constitutional challenges to the immigration regulations they administer); Matter of Fuentes-Campos, 21 I&N Dec. 905, 912 (BIA 1997) ("[E]ven if we were to perceive a constitutional infirmity in the unambiguous statute before us, we would be without authority to remedy it."). In light of the BIA's limited scope of review, administrative remedies in this case are not adequate to resolve Petitioner's due process challenge to the IJ's bond determination. The exhaustion of administrative remedies is therefore deemed waived in this matter. See Hernandez v. Sessions, 872 F.3d 976, 988–89 (9th Cir. 2017) (affirming district court decision to waive exhaustion requirement in constitutional challenge to detention hearings); see also Mau v. Chertoff, 562 F.Supp.2d 1107, 1113–14 (S.D. Cal. 2008) (finding administrative exhaustion did not preclude a motion to enforce the district court's prior order because the BIA did not have authority to enforce the federal court's judgment).

**III. Abuse of Discretion**

**A. Legal Standard**

A district court has continuing jurisdiction to enforce its injunction. See Crawford v. Honig, 37 F.3d 485, 488 (9th Cir. 1994). The party seeking to enforce the injunction has the burden of showing by clear and convincing evidence that the enjoined party violated a specific provision of the court's order. Kia America, Inc. v. Rally Auto Group, Inc., Case No. 8:22-cv-00109-JVS-JDE, 2022 WL 17185011 at *2 (C.D. Cal. Oct. 20, 2022) (citing FTC v. Affordable Media, 179 F.3d 1228, 1239 (9th Cir. 1999)). The language in an injunction should be clear such that ordinary persons will know "precisely" what action is proscribed in order to provide sufficient notice to the party being enjoined. Clark v. Coye, 60 F.3d 600, 604 (9th Cir. 1995). "[A]ll ambiguities are resolved in favor of the person [or entity] subject to the injunction." United States v. Holtzman, 762 F.2d 720, 726 (9th Cir. 1985).

The standard of review must also account for the fact that what is being reviewed here is an immigration judge's determination of danger to the community. In constitutional challenges to an IJ's detention determination, a habeas court generally reviews mixed questions of fact and law under an "abuse of discretion" standard. Martinez v. Clark, 124 F.4th 775, 785 (9th Cir. 2024). "[A]buse of discretion" review does not involve "reweigh[ing] evidence" but rather determining whether the IJ "applied the correct legal standard." Id. (citation and quotations omitted). In other words, "[i]n reviewing the IJ's determination, a district court['s] ... review is limited to whether the IJ's decision 'reflects clear legal error or is unsupported by sufficient evidence.'" Quan v. Barr, No. 20-cv-08118-LB, 2021 WL 308610 at *4 (N.D. Cal. 2021) (quoting Hilario Pankim v. Barr, No. 20-CV-02941-JSC, 2020 WL 2542022, at *8 (N.D. Cal. May 19, 2020) (internal citation and quotation omitted)). The reviewing court must bear in mind that "the government's discretion to incarcerate non-citizens is always constrained by the requirements of due process." Hernandez, 872 F.3d 976, 981 (9th Cir. 2017). Moreover, a habeas court reviews pure questions of law de novo. See Singh v. Holder, 638 F.3d 1196, 1202-03 (9th Cir. 2011).

Incorporating the two standard of review doctrines discussed above, the Court now determines whether Petitioner has shown clearly and convincingly that the IJ abused his

discretion in determining that Petitioner poses a danger to the community by clear and convincing evidence.

**B. Analysis**

According to the Board of Immigration Appeals, a noncitizen's danger and flight risk may be evaluated based on a number of factors including "(1) whether the individual has a fixed address in the United States; (2) length of residence in the United States; (3) the individual's family ties in the United States; (4) the [noncitizen]'s employment history; (5) the [noncitizen'’s record of appearance in court; (6) the [noncitizen]'s criminal record, including the extensiveness of criminal activity, the recency of such activity, and the seriousness of the offenses; (7) the [noncitizen]'s history of immigration violations; (8) any attempts by the [noncitizen] to flee prosecution or otherwise escape from the authorities; [and] (9) the [noncitizen]'s manner of entry to the Unites States." See Matter of Guerra, 24 I&N Dec. 37, *3 (BIA 2006), abrogated on other grounds by Hernandez-Lara v. Lyons, 10 F.4th 19, 41 (1st Cir. 2021).

The clear and convincing standard requires the government to present evidence that establishes "an abiding conviction that the truth of its factual contentions at issue are highly probable." Colorado v. New Mexico, 467 U.S. 310, 316 (1984) (internal citation and quotation marks omitted); see also Mondaca-Vega v. Lynch, 808 F.3d 413, 422 (9th Cir. 2015). This is only the case where "the material it offered instantly tilted the evidentiary scales in the affirmative when weighed against the evidence … offered in opposition." Colorado, 467 U.S. at 316. When reviewing a bond decision pursuant to a habeas petition, absent any "red flags," the district court should assume that the IJ applied the standard that it announced in its bond memorandum review of the immigration judge's bond decision. Martinez, 124 F.4th at 785. With these frameworks in mind, the undersigned now turns to the IJ's bond decision in Petitioner's case.

The IJ abused his discretion by failing to meaningfully apply the clear and convincing standard and by committing other legal error integral to the proper implementation of that standard in this context. The IJ based his finding of dangerousness "primarily" on the "recent" criminal charge for domestic violence, for which Petitioner received "some sort of suspended

sentence." ECF No. 20 at 36:25-38:35. The IJ rightfully considered the recency Petitioner's criminal history but did not properly or fully consider the seriousness of the conviction, nor did he consider the extensiveness of Petitioner's criminal history at all. See Matter of Guerra, 24 I&N Dec. 37, *3 (noting that the IJ may consider, as part of its dangerousness analysis, the noncitizen's criminal history, "including the *extensiveness* of criminal activity, the recency of such activity, and the *seriousness* of the offenses") (emphasis added). It is unclear what, if any, evidence the IJ relied on to examine the severity of Petitioner's criminal history. In support of their argument that the offense was serious, Respondent's attorney emphasized that Petitioner received a 120-day sentence. ECF No. 20 at 6:10-9:25. The IJ relied on that "suspended sentence" – at least in part – in finding that Petitioner's criminal history makes him a danger to the community. Id. at 36:25-38:35. But the sentence actually imposed suggests the opposite. Nevada Revised Statute § 200.485(1)(a) categorizes the offense as a misdemeanor. The statue requires a sentence of up to six months in jail and 48-120 hours of community service. NRS § 200.485(1)(a). Petitioner received the lowest amount of community service possible and will not be required to serve any custodial sentence if he completes the additional terms of the interim sentence. ECF No. 5-2. Rather than imply severity, the suspended sentence suggests that the offense itself was proportionately not particularly serious, in the universe of misdemeanor domestic violence cases. Additionally, the IJ failed to consider that the criminal sentence imposes restrictions that mitigate danger to the community. In order to avoid 120 days in jail, Petitioner must complete anger management classes and stay away from the victim. Id.

The government presented no evidence regarding the factual circumstances of Petitioner's arrests that would reasonably show his release would threaten the community. In the absence of any inquiry into or analysis of the criminal incident itself, the IJ's decision implies a categorical determination that any arrest involving domestic violence is a serious offense that demonstrates danger to the community. But such a determination without any individualized analysis is insufficient to find that Respondent met their burden by clear and convincing evidence.

In finding that Petitioner poses a danger to the community, the IJ relied on a single, recent arrest for a crime which he deemed "serious" without the appropriate analysis called for by BIA

case law. The IJ's failure to engage with the specific, factual circumstances of the arrest and fully analyze the severity and extensiveness of Petitioner's criminal history demonstrates his misapplication of the heightened clear and convincing burden. Accordingly, the IJ's failure to hold the government to its burden was error.

**IV. Remedy**

Having determined that the IJ's decision did not comply with the clear and convincing standard mandated by Judge Coggins' order, the remaining issue is what remedy should be ordered. Petitioner argues that the defects in the bond hearing constitute a second due process violation and that the only appropriate remedy is release. Respondent maintains that if the Court orders relief, the proper remedy is not release but another bond hearing.

Respondent relies on S.E. v. Noem, No. 1:26-CV-00356-DAD-SCR, 2026 WL 206085, at *3–4 (E.D. Cal. Jan. 27, 2026) ("S.E. v. Noem I"), where Judge Drozd granted a motion for preliminary injunction on due process grounds and ordered a bond hearing as a remedy for the petitioner's prolonged, mandatory detention under 8 U.S.C. § 1226(c). The petitioner then filed a motion to enforce the injunction, contending that the IJ's subsequent flight risk determination was an abuse of discretion. Judge Drozd granted the motion to enforce, but ordered a second bond hearing over the undersigned's recommendation that the petitioner be released. S.E. v. Noem, No. 1:26-CV-00356-DAD-SCR, 2026 WL 836327, at *1-2 (E.D. Cal. Mar. 26, 2026) (S.E. v. Noem II"). Judge Drozd explained that releasing the petitioner would require a new procedural due process analysis "in light of the government's failure to provide petitioner a constitutionally adequate bond hearing, which would exceed the scope of the court's order granting a preliminary injunction." S.E. v. Noem II, 2026 WL 836327, at *2. Similarly, in Singh v. Warden, No. 1:26-CV-01973-DAD-CSK, 2026 WL 1328588 (E.D. Cal. May 12, 2026), Judge Drozd granted the petitioner's motion to enforce, but ordered a second bond hearing instead of release. Judge Drozd granted the underlying motion for temporary restraining order via minute order on grounds the government revoked the petitioner's release on recognizance pursuant to 8 U.S.C. § 1226(a) in violation of due process. However, Judge Drozd explained in the minute order that the evidence warranted a post-deprivation hearing, as opposed to the petitioner's immediate release. Singh,

2026 WL 1328588, at *1. Relying on S.E. v. Noem II, Judge Drozd explained his reasoning for again ordering a second bond hearing as a remedy for the IJ's abuse of discretion:

> "[I]t is not clear to the court that the court may order petitioner's release when ruling on petitioner's motion to enforce the court's preliminary injunction which ordered a bond hearing. When deciding a motion to enforce the court's prior order, the court's review concerns whether the Government complied with the Court's Order and provided Petitioner with a bond hearing where the government bore the burden of proof." *S.E. v. Noem [II]*, 2026 WL 836237, at *2 (internal quotation marks omitted). Accordingly, construing petitioner's motion as one seeking to enforce this court's prior order, the proper remedy is to order a new bond hearing.

Singh, 2026 WL 1328588, at *8.

The reasoning in S.E. II and Singh is instructive here and ultimately leads to the conclusion that this case is materially distinguishable. Unlike the injunctions in those cases, the order that Petitioner seeks to enforce here required his immediate release absent a court-ordered bond hearing where the government must prove, by clear and convincing evidence, that Petitioner is a flight risk or a danger to the community. See ECF No. 13 at 3 ("If Respondents fail to provide Petitioner a bond hearing within fourteen (14) days, Petitioner shall be immediately released from Respondents' custody on the same terms as Petitioner's previous release"). As Petitioner has not yet received a compliant hearing, ordering his release here is within the scope of Judge Coggins' order granting the § 2241 petition and does not require renewed procedural due process analysis. Accordingly, the undersigned recommends that the motion to enforce judgment be granted and Petitioner be released in accordance with the instructions below.

Accordingly, IT IS HEREBY RECOMMENDED that Petitioner's Motion to Enforce Judgment be GRANTED as follows:

1. Respondent be ORDERED to immediately RELEASE Petitioner from custody on the same conditions he was subject to prior to his March 4, 2026 detention;
2. Respondent be ENJOINED AND RESTRAINED from re-detaining Petitioner unless Petitioner is provided with written notice before a pre-deprivation bond hearing to be convened by a neutral decision maker, at which hearing Respondent will bear the burden of demonstrating that Petitioner is a flight risk or danger to the community.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 29, 2026



SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE